UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

MISTY ANNE MARTIN,

     Plaintiff,

v.                                    Case No. 5:17cv256-CJK

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

     Defendant.

_____/

MEMORANDUM ORDER

This case is before the court pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) for review of the final determination of the Commissioner of Social Security ("Commissioner") denying Misty Anne Martin's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34, and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-83. The parties consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73 for all proceedings in this case, including entry of final judgment. Upon review of the record before the court, I conclude the Administrative Law Judge's ("ALJ") evaluation of plaintiff's subjective symptoms is not supported by substantial

evidence. The decision of the Commissioner, therefore, should be remanded for additional proceedings consistent with this order.

## ISSUES ON REVIEW

Ms. Martin, who will be referred to as claimant, plaintiff, or by name, claims: (1) the ALJ "erroneously evaluated Ms. Martin's testimony regarding her symptoms and limitations"; and (2) the ALJ-formulated residual functional capacity ("RFC") is not supported by substantial evidence. (Doc. 18).

## PROCEDURAL HISTORY

On January 24, 2014, plaintiff protectively filed an application for DIB, claiming disability beginning July 22, 2012, due to hypothyroidism, fibromyalgia, high blood pressure, migraines, and obesity.[1] T. 100.[2] The Commissioner denied the applications initially and on reconsideration. T. 108, 124. After a hearing on March 21, 2016, the ALJ found claimant not disabled under the Act. T. 15-22. The Appeals Council denied a request for further review and, as a result, the ALJ's decision became the final determination of the Commissioner. T. 1-3. The Commissioner's determination is now before the court for review.

_____

[1] The ALJ's decision indicates plaintiff also filed an application for SSI on February 22, 2016. T. 15. The SSI application, however, does not appear in the record.

[2] The administrative record filed by the Commissioner consists of 9 volumes (docs. 11-2 through 11-10) and has 540 consecutively-numbered pages. References to the record will be by "T.," for transcript, followed by the page number.

## STANDARD OF REVIEW

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). "Even if the evidence preponderates against the [Commissioner], [the court] must affirm if the decision is supported by substantial evidence." *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In

determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.") (*citing Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)). The reviewing court, however, may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d 1273, 1273 (11th Cir. 1985).

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To qualify as a disability, the physical or mental impairment must be so severe the plaintiff not only is unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Pursuant to 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the Commissioner analyzes a disability claim in five steps:

1.     If the claimant is performing substantial gainful activity, she is not disabled.

2.     If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.     If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least 12 months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.     If the claimant's impairments do not prevent her from performing her past relevant work, she is not disabled.[3]

5.     Even if the claimant's impairments prevent her from performing her past relevant work, if other jobs exist in significant numbers in the national economy that accommodate the claimant's RFC and vocational factors, she is not disabled.

## FINDINGS OF THE ALJ

In her written decision, the ALJ made several findings relative to the issues raised in this appeal:

---

[3] "[C]laimant bears the initial burden of establishing a severe impairment that keeps [her] from performing [her] past work." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

•       Claimant has the following severe impairments: degenerative disc disease, obesity, migraines, carpal tunnel syndrome, and hypothyroidism.  T. 17.

•       Claimant has the RFC to lift up to 20 pounds occasionally and 10 pounds frequently; stand and walk up to 6 hours and sit up to 6 hours in an 8-hour day with normal breaks; occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, or crawl; should not operate moving or hazardous machinery or work around unprotected heights; and frequently bilaterally handle objects.  T. 19-20.

•       Claimant has not been under a disability, as defined in the Act, from July 22, 2012, through June 2, 2016.  T. 22.

<u>FACT BACKGROUND AND MEDICAL HISTORY</u>

At the March 2016 hearing, Ms. Martin testified about her health, daily activities, and work history.  Born on December 24, 1974, she is 5'4'' and weighs about 270 pounds.  T. 67-68.  She has a GED and completed one year of college.  T. 67.  She worked as a document clerk from 2007 to 2009.  T. 70-72, 92.  From 2010 to 2012, she worked as a customer service representative, but stopped because her "thyroid was acting up and [she] was losing [her] voice . . . for two or three days at a time."  T. 69-70.  She subsequently attended a culinary arts program at Gulf Coast State College, but stopped in January 2014 due to neck and back pain that radiated to her legs.  T. 74-76.

Ms. Martin estimated she can stand "maybe five or ten minutes." T. 85. She can walk short distances but has "to sit down after a few minutes." T. 84-85. She can sit for 10 to 20 minutes before needing to get up. T. 85, 87.

Claimant testified she has migraines that "usually start with a pulsing behind [her] right eye. . . . And then [she] will get like a slamming feeling to the right side of [her] head[.]" T. 79. "[T]hen [she starts] sweating and [her] eye will start tearing up." T. 79-80. Her "neck starts to really hurt." T. 80. To alleviate the migraines, she goes into the bedroom, turns off the lights, turns on a fan, and lays down. T. 80. She takes Topamax twice a day to prevent migraines, and Fioricet to treat them at their onset. T. 80. Despite taking these medications, the migraines "still hit at least once a week" and last an average of 10 to 12 hours. T. 80.

As part of the disability application process, Walter Harris, M.D., reviewed Ms. Martin's medical records on May 6, 2014, and offered an opinion as to functional limitations. T. 119-22. Dr. Harris concluded plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for about 6 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday. T. 120. With respect to postural limitations, Dr. Harris found claimant could frequently climb ramps or stairs, and never climb ladders, ropes, or scaffolds. T. 120-21. The doctor also noted "[claimant] does not have [a diagnosis] of fibromyalgia documented in [the medical evidence of record]." T. 122.

Medical records from The NeuroPain Center also appear in the record. In March and April of 2015, plaintiff reported she experienced two migraines a week which lasted from 30 minutes to 12 hours; associated symptoms included photosensitivity, phonosensitivity, nausea, and dizziness. T. 478, 483. She utilized Fioricet as abortive therapy. T. 478, 483. Staff at the Center ordered a brain MRI to evaluate the dizziness and headaches. T. 478, 481, 487. In May 2015, staff also ordered x-rays of the cervical and lumbar spine to evaluate plaintiff's complaints of back pain. T. 473-77.

X-rays of the lumbar spine taken on May 13, 2015, showed "Grade 1 anterolisthesis of L4 and L5," as well as "mild degenerative disc disease at L5-S1." T. 471. The x-rays of the cervical spine showed "minimal straightening of normal cervical lordosis with mild degenerative disc disease at C5-6 and C6-7." T. 472. The brain MRI, completed on June 1, 2015, revealed "nonspecific FLAIR signal abnormalities in the frontal lobes." T. 470. The interpreting doctor noted "these may be chronic changes of microvascular disease" and "similar findings can be seen in migraineurs." T. 470.

On July 8, 2015, Ms. Martin told staff at The NeuroPain Center the frequency of the migraines had increased to "every other day." T. 460. Her treating provider prescribed "Topamax to assist with the preventative care for migraine headaches." T. 463. Claimant also sought treatment from Gulf View Medical on July 8, 2015.

T. 427-28.  She complained of low back pain that radiated down the right leg to the right knee.  T. 427.  A physical examination revealed "minimal lumbar paravertebral tenderness," a normal gait, and full range of motion in all extremities.  T. 428.

On August 6, 2015, plaintiff returned to The NeuroPain Center with complaints of low back pain and headaches.  T. 455.  "Her lumbar spine pain has been about the same, but overall worsened over the past few years."  T. 455.  Claimant stated her "headaches have been better with the addition of Topamax."  T. 455.  Nerve conduction studies performed in August 2015 revealed "evidence of mild chronic L5 and S1 radiculopathy on the right and left" and "evidence of mild chronic C6 radiculopathy on the right and left."  T. 528, 533.

On September 3 and October 1 of 2015, Ms. Martin reported her "headaches have been stable on current dosing of Topamax."  T. 518, 523.  On January 15, 2016, plaintiff complained of "lightheadedness and morning headaches," but indicated the Topamax has "been very helpful."  T. 495-96.

On February 12, 2016, plaintiff reported "having headaches constantly," which were "described as throbbing and pulsating, [and] associated with photophobia, phonophobia, nausea, and vomiting."  T. 490.  Her low back pain radiated to the lower extremities and caused numbness and tingling.  T. 490.  A physical examination revealed "5/5" muscle strength but with decreased range of motion in the lumbar spine and decreased sensation "over the L5 on the right."  T.

492. To treat the headaches, Mustafa Hammad, M.D., gave plaintiff a Toradol injection and increased the Topamax dosage. T. 493.

A March 30, 2016, MRI of the cervical spine showed: (1) "mild reversal of normal cervical lordosis centered at C5-6"; (2) "degenerative disc disease with disc osteophyte complex at C5-6 slightly paracentral to left with no significant foraminal narrowing or spinal stenosis"; and (3) "mild disc osteophyte complex at C6-7 with no spinal stenosis or foraminal narrowing." T. 539-40.

## ANALYSIS

Ms. Martin argues "the ALJ erroneously evaluated [her] testimony regarding her symptoms and limitations" and "the ALJ's RFC findings are not supported by substantial evidence." (Doc. 18, p. 5-14). The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through [her] . . . own testimony of pain or other subjective symptoms." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see also Stewart v. Astrue*, 551 F. Supp. 2d 1308, 1319 (N.D. Fla. 2008) ("Pain and other symptoms reasonably attributed to a medically determinable impairment are relevant evidence for determining residual functional capacity.") (*citing* S.S.R. 96-8p). "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a

severity that it can be reasonably expected to give rise to the alleged pain." *Holt*, 921 F.2d at 1223 (*citing Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). "[T]he ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." *Dyer*, 395 F.3d at 1210 (*quoting Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)). And of course, the reasons articulated for disregarding the plaintiff's subjective testimony must be based on substantial evidence. *See Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991).

Migraines

Ms. Martin asserts the ALJ erred when evaluating her complaints of migraines. The ALJ identified Ms. Martin's migraines as a severe impairment, T. 17, but concluded the impairment was not as severe as she alleged. T. 21. At the March 2016 hearing, Ms. Martin testified she had migraines "at least once a week" despite taking Topamax twice a day. T. 80. The ALJ, however, discounted this testimony by suggesting it was inconsistent with treatment notes from The NeuroPain Center. T. 20-21. Specifically, the ALJ noted: (1) in August 2015, "claimant reported that her headaches were better with the addition of Topamax"; (2) in September 2015, "claimant reported that her headaches were stable with her

current dosage of Topamax"; and (3) in January 2016, "claimant reported that her headaches were stable with Topamax."[4]  T. 20-21.

A review of the record shows the ALJ's reason for discrediting plaintiff's testimony concerning the severity of her migraines is not supported by substantial evidence.  As claimant points out, before she began taking Topamax she experienced headaches more frequently.  For example, in June 2015, Ms. Martin stated "she has headaches that occur every single day in the parietal region."  T. 465.  In July 2015, she indicated the migraines "are occurring every other day . . . with the symptoms of photosensitivity, phonosensitivity, nausea, and dizziness."  T. 460.  Thus, the treatment records showing Topamax improved or stabilized claimant's condition are not inconsistent with her testimony that she continued to experience debilitating migraines at least once per week.

Instead of directly addressing plaintiff's argument on this point, the Commissioner says plaintiff "fail[ed] to cite any treatment record, including her subjective complaints to medical providers, that [is] consistent with her testimony."[5]

---

[4] The January 2016 treatment note does not indicate "claimant reported that her headaches were stable with Topamax," though it does state "Topamax [has] been very helpful."  T. 495.

[5] The Commissioner also argues plaintiff "fail[ed] to cite any medical opinion that opines greater functional limitations, due to her migraines, than the RFC found by the ALJ."  (Doc. 19, p. 8).  A claimant, however, is not required to submit an RFC assessment from a doctor to establish disability.  *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) ("A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability.").

(Doc. 19, p. 8). Plaintiff, however, correctly points to a treatment note from February 2016—just one month before the ALJ hearing—showing plaintiff "continue[d] to have [a] significant amount of headaches," which were "described as throbbing and pulsating, [and] associated with photophobia, phonophobia, nausea, and vomiting." T. 490. This evidence is consistent with claimant's hearing testimony.

Moreover, the ALJ is responsible for articulating reasons, supported by substantial evidence, for discrediting a claimant's testimony. *See Perez v. Comm'r of Soc. Sec.*, 625 F. App'x 408, 420 (11th Cir. 2015) ("If the ALJ decides not to credit a claimant's testimony regarding her subjective symptoms, she must state 'explicit and adequate reasons for doing so.'") (*quoting Foote*, 67 F.3d at 1561-62). Here, the ALJ did not articulate an adequate reason for discrediting plaintiff's testimony regarding her migraines. Thus, the ALJ's conclusion that Ms. Martin's migraines were not so severe as to affect her RFC is not supported by substantial evidence.

Fibromyalgia

Ms. Martin next argues "the ALJ erroneously failed to make any findings regarding whether . . . fibromyalgia, upon which Ms. Martin also based her claims for disability benefits, is a medically determinable severe impairment." (Doc. 18, p. 7). Fibromyalgia "is a complex medical condition characterized primarily by

widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." S.S.R. 12-2p, 2012 WL 3104869 at *2. Fibromyalgia "often lacks medical or laboratory signs, and is generally diagnosed mostly on a[n] individual's described symptoms." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

"Generally, a person can establish that he or she has an [medically determinable impairment] of [fibromyalgia] by providing evidence from [a licensed physician]." S.S.R. 12-2p, 2012 WL 3104869 at *2. The ALJ "cannot rely upon the physician's diagnosis alone. The evidence must document that the physician reviewed the person's medical history and conducted a physical exam." *Id.* An ALJ may find a claimant has a medically determinable impairment of fibromyalgia if a physician has diagnosed it and there is evidence: (1) of "[a] history of widespread pain—that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)—that has persisted (or that persisted) for at least 3 months"; (2) of "[a]t least 11 positive tender points on physical examination" or "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable

bowel syndrome"; and (3) that other disorders that could cause the symptoms or signs were excluded. *Id.* at *2-3.

Generously speaking, the record contains minimal evidence related to fibromyalgia. Although Ms. Martin identified fibromyalgia as a condition that limited her ability to work in her disability application, T. 100, 201, neither she nor her attorney mentioned fibromyalgia or alleged it caused any functional limitations during the March 2016 hearing, T. 59-97. Plaintiff cites a single treatment note from The NeuroPain Center in support of her argument regarding fibromyalgia. (Doc. 18, p. 13); T. 495-99.[6] The "History of Present Illness" section of the January 15, 2016, note states "[s]he also has diffuse body fibromyalgia." T. 495. The "Impression" section of the note, however, does not include a diagnosis of fibromyalgia, despite listing plaintiff's other diagnoses (e.g., cervicalgia, lumbago, migraines). And when Dr. Harris reviewed the medical record in May 2014, he noted "[claimant] does not have [diagnosis] of fibromyalgia." T. 122. Because plaintiff did not identify evidence showing a physician diagnosed fibromyalgia, the ALJ's failure to discuss it or designate it as a medically determinable impairment does not constitute reversible error. In any event, plaintiff provides no basis for a finding that inclusion of fibromyalgia as a severe impairment would affect the outcome. *See* 20 C.F.R. §§

---

[6] Fibromyalgia is also listed in the "Past Medical History" sections of treatment notes from The NeuroPain Center. T. 455, 460, 466, 473, 479, 484, 490.

404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) ("'[T]he finding of any severe impairment . . . whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe' is enough to satisfy step two.") (*quoting Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

<u>Degenerative Disc Disease</u>

The ALJ identified degenerative disc disease as a severe impairment. T. 17. The ALJ, however, discounted the allegations of disabling pain stemming from the impairment as inconsistent with the objective evidence. T. 21. The ALJ noted: (1) x-rays of the lumbar and cervical spine from May 2015 "showed only mild degenerative changes"; (2) a July 2015 physical examination revealed "minimal tenderness in her lumbar spine, a normal gait, and full range of motion in all extremities"; (3) in February 2016, claimant "had 5/5 muscle strength, decreased range of motion in her lumbar spine, decreased sensation over the L5 on the right, and a normal heel-toe walk and tandem walk"; (4) the nerve conduction studies revealed only mild radiculopathy; and (5) the March 2016 MRI of the cervical spine revealed mild degenerative changes. T. 21. Ms. Martin appears to suggest the ALJ mischaracterized the objective findings related to degenerative disc disease. (Doc. 18, p. 11-12). But a review of the record shows the ALJ's assessment of the objective evidence was reasonable. T. 428, 471-72, 492, 528, 533, 540.

Nevertheless, the ALJ's consideration of the complaints related to plaintiff's spinal impairment is problematic. The ALJ relied on Dr. Harris' opinion and on the objective medical evidence to discount claimant's subjective complaints and support the RFC determination. T. 21 ("In sum, the [RFC] assessment is supported by Dr. Harris' opinion, by the treatment notes that indicated that the claimant's headaches were stable on medications, and by the diagnostic tests of the lumbar and cervical spine that showed no nerve root impingement or stenosis and only mild radiculopathy."). Although "[o]bjective medical evidence . . . is a useful indicator to assist [the ALJ] in making reasonable conclusions about the intensity and persistence of . . . symptoms and the effect those symptoms, such as pain, may have on [a claimant's] ability to work[,]" the ALJ "will not reject . . . statements about the intensity and persistence of . . . pain or other symptoms or about the effect [the] symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

And Dr. Harris' opinion provides minimal, if any, support for the ALJ's RFC assessment. Dr. Harris reviewed the medical record in 2014, over two years before the ALJ issued a decision. T. 122. Dr. Harris did not identify degenerative disc disease or carpal tunnel syndrome as impairments, T. 118, although the ALJ later found these were severe impairments. In addition, the doctor did not review the May

2015 x-rays, the August 2015 nerve conduction studies, or the March 2016 MRI. The ALJ viewed these diagnostic tests as consistent with Dr. Harris' opinion but, generally, "an ALJ, as a lay person, is not qualified to interpret raw data in a medical record." *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996) (citations omitted). Upon remand, therefore, the Commissioner should reevaluate plaintiff's complaints of pain with respect to her spinal impairment.

Accordingly, it is ORDERED:

1.      The Commissioner's decision is set aside and the matter REMANDED for further proceedings consistent with this order.

2.      The clerk is directed to enter judgment in favor of plaintiff and close the file.

DONE AND ORDERED this 24th day of January, 2019.


*/s/* *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**